# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>ERA AVIATION, INC.,<br><br>Debtor. | Case No. A05-02265-DMD<br>Chapter 11 [Lead Case]<br><br>JOINTLY ADMINISTERED |
| In re:<br><br>ERA AVIATION INVESTMENT GROUP, LLC,<br><br>Debtor. | Case No. A05-02266-DMD<br>Chapter 11<br><br>**Filed On 7/12/06** |

## THIRD MEMORANDUM REGARDING CASH COLLATERAL

The debtor seeks to use cash collateral for the period from July 14, 2006, through September 29, 2006. During this period, the debtor's updated projections indicate that cash on hand would vary on a weekly basis from a high of $2,999,084.00 during the week of September 1, 2006, to a low of $1.79 million during the week of September 22, 2006.[1] The debtor had $2.4 million on hand as of July 11, 2006, the date of the most recent cash collateral hearing. CapitalSource opposes the debtor's motion and requests adequate protection.

CapitalSource again argues for a liquidation valuation of the debtor's assets. It cites *Matter of Keystone Camera Products Corp.*[2] in support of its position. In that case, the court stated:

---

[1] *See* Era's Cash Flow Projection - *updated* June 26, 2006, filed June 27, 2006 [Docket No. 298].

[2] 126 B.R. 177 (Bankr. D.N.J. 1991).

> A secured creditor has a constitutional right to have the value of its secured claim on the petition date preserved. *Wright v. Union Central Life Insurance Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940).
>
> In determining whether there is an excess of security so as to constitute a cushion, it is necessary to determine whether the court values the collateral on a going concern value or on a liquidation value. This fact was expressly noted by Congress in the congressional history when the Bankruptcy Code was adopted.
>
>> In any particular case, especially a reorganization case, the determination of which entity should be entitled to the difference between the going concern value and the liquidation value must be based on equitable considerations arising from the facts of the case.
>
> Sen.Rep. No. 989, 95th Cong. 2nd Sess. (1978); H.R.Rep. No. 595, 95th Cong. 1st Sess 339 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.
>
> The bankruptcy court has considerable discretion in determining the appropriate method of valuation . . .[3]

The court in *Keystone Camera* applied a balancing test to determine whether the chapter 11 debtor could borrow additional funds and prime a current secured lender. It noted that the debtor's doors were closed and all 400 of its employees were on furlough. The debtor had no cash in the bank and outstanding post-petition obligations of approximately

---

[3]*Keystone Camera*, 126 B.R. at 183-84.

2

$847,000.00. Due to the closing of the debtor's facility, it appeared unlikely that it could honor the five-year warranties on its cameras, which made collection of its accounts receivable problematic.[4] The proposed loan was insufficient to "carry the debtor forward on a permanent basis."[5] Considering the debtor's dire circumstances, the court concluded that there was no reasonable chance of reorganization and that forced sales value, rather than going concern value, would be used to determine whether the lender would be adequately protected if the additional loan were permitted.[6] It found there was insufficient equity in the lender's collateral to permit a priming loan of $2 million.

Era Aviation's circumstances are not as bleak as were Keystone Camera's. It is high season for tourism in Alaska, and Era's planes are flying. Era has paid all its post-petition obligations to date. There is virtually no deferred maintenance on any of its aircraft.[7] All is not well, however. This case has been pending for seven months. Era hasn't completed its audited financial statement for 2005. Era had promised this by mid-May. Further, no proposed plan has yet been circulated. Era projected that this would be done by mid-June. The debtor's failure to meet its own self-imposed deadlines is problematic. The business is operating and, based on Era's cash flow projections, appears to be running in the

---

[4]*Id.* at 182-183.

[5]*Id.* at 185.

[6]*Id.* at 186.

[7]CapitalSource contended that Era had failed to perform needed maintenance on planes. Era has rebutted this contention. Era has opted not to perform certain discretionary upgrades while contemplating different reorganization scenarios.

black. It would be premature to say that Era has no reasonable chance of reorganization. But the lack of more reliable financial information and a proposed plan makes it difficult for the court to realistically evaluate Era's prospects for reorganization.

This case is in a different posture from when the issue of Era's use of cash collateral was first considered. In the early phases of this case, the court was more inclined to adopt Era's arguments in favor of its reorganization prospects. But the passage of time and want of definitive financial information from Era have tempered this inclination.

> "[T]here is an inherent tension between a debtor's need to use its cash to continue operating and a secured creditor's right to preserve its security interest in the debtor's cash proceeds." The requirement of adequate protection set forth in § 363 balances these divergent interests by allowing the debtor to use cash collateral while ensuring that the creditor will ultimately receive the full value of that collateral.
>
> The secured creditor has an entitlement to the value of its lien. Adequate protection protects that entitlement. Although stripped of the right to immediate possession of its property, the creditor receives assurances that the value it could have received through foreclosure will not decline.[8]

---

[8] *Security Leasing Partners, LP, v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 441-42 (B.A.P. 9th Cir. 2004) (citations omitted).

4

Given the current circumstances, I agree with CapitalSource that some valuation adjustments are appropriate. I value the debtor's assets on June 11, 2006, as follows:

|  |  |
|---|---|
| 9 Twin Otters | $5,000,000.00 |
| 3 Dash Eights | 2,000,000.00 |
| Rotable parts, inventory and spare engines | 1,500,000.00 |
| **Sub-total:** | **$8,500,000.00** |
|  |  |
| Cash | 2,400,000.00 |
| Accounts Receivable | 2,400,000.00 |
| Certificate | 1,100,000.00 |
| **Sub-total:** | **$5,900,000.00** |
|  |  |
| **Total:** | **$14,400,000.00** |

Based on its proof of claim, CapitalSource is owed $12,956,274.00 through June 11, 2006, plus substantial attorney's fees. Given the projected expenses of liquidation and the accruing fees, I conclude that there is an insufficient equity cushion to provide adequate protection for CapitalSource through September 29, 2006. From and after July 11, 2006, CapitalSource is entitled to adequate protection in the amount of $4,360.75 per day. The debtor shall make three adequate protection payments to CapitalSource, as follows:

$87,215.00 on August 1, 2006 (for the period of July 11 - 31, 2006, or 20 days);

$135,183.25 on September 1, 2006 (for the 31 days in August, 2006); and

$126,461.75 on October 1, 2006 (for the 29 days in September, 2006).

Additionally, to reimburse CapitalSource for its ongoing attorney's fees in this case, the debtor shall make the following payments:

5

$15,000.00 on August 1, 2006;

$20,000.00 on September 1, 2006; and

$20,000.00 on October 1, 2006.

With these additional provisions, the debtor's motion for use of cash collateral through September 29, 2006, will be granted. An order will be entered consistent with this memorandum.

DATED: July 12, 2006.

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  C. Christianson, Esq.
J. Siemers, Esq.
S. Baker, Esq.
M. E. Beardsley, Esq.
D. Bundy, Esq.
P. Hallgrimson, Esq.
J. Jonas, Esq.
J. Liu, Esq.
M. Mills, Esq.
D. Oesting, Esq.
J. Ostrovsky, Esq.
R. Polemeni, Esq.
R. Pomeroy, Esq.
M. Schiller, Esq.
G. Sleeper, Esq.
H. Thiersch, Esq.
K. Hill, Esq.

07/12/06