# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>ERA AVIATION, INC.,<br><br>Debtor. | Case No. A05-02265-DMD<br>Chapter 11  [Lead Case]<br><br>**Filed On 9/29/06** |
| In re:<br><br>ERA AVIATION INVESTMENT GROUP, LLC,<br><br>Debtor. | Case No. A05-02266-DMD<br>Chapter 11 |

## MEMORANDUM REGARDING DEBTOR'S MOTIONS TO SELL TWIN OTTERS

The debtor has filed and noticed two motions to sell certain of its aircraft in this case. Its first motion seeks authority to sell three of its 100 and 200 series Twin Otter aircraft, free and clear of liens in exchange for $600,000 cash and a $550,000 credit on a Heavy Check on one of its Dash-8s.[1] The $600,000 in cash would be paid to CapitalSource to be applied against this creditor's secured claim.

In the debtor's second motion, it seeks permission to sell its six remaining Twin Otters for a minimum total price of $7,909,500, net of selling costs, free and clear of liens.[2] The proceeds from the sale would be used to purchase three Beech 1900D aircraft,

---

[1] Mot. for Authority to Sell Three 100 and 200 Series Twin Otter Aircraft, Free and Clear of Liens, for $600,000 Cash and $550,000 Credit on Heavy Check, and to Pay CapitalSource $600,000, filed Sept. 8, 2006 (Docket No. 378).

[2] Mot. to Sell Six (6) Twin Otter 300 Series Aircraft, Free and Clear of Liens, in Exchange for Three (3) Beech 1900D Aircraft, filed Sept. 12, 2006 (Docket No. 381).

with any excess sale proceeds above the cost of the Beech 1900Ds being paid to CapitalSource. So the market would not be flooded, the debtor proposed selling the Twin Otters in staggered sales, two to be be sold in December, 2006, two in March of 2007, and the remaining two by July, 2007. Short term bridge loans would be arranged for the Beech 1900Ds pending the sale of the Twin Otters.

Consummation of the transactions proposed in the debtor's two motions would reconstruct its fleet, reducing it to half. Instead of having nine Twin Otters and four Dash-8s (one of which is leased), the debtor would have 3 Beech 1900Ds and three Dash-8s. The debtor explains that this conversion of its fleet, which is part of its plan of reorganization, must start immediately because the seller of the Beech aircraft needs 90 to 120 days to prepare the aircraft for service and must have a commitment from Era before it can start work. The debtor's reasons for replacing its Twin Otters with the Beech 1900Ds are that the Beech aircraft are faster and more fuel efficient, can carry a larger payload, are pressurized, have a longer range, and can be used interchangeably with the Dash-8s for scheduling purposes.[3]

The debtor filed a supplemental memorandum in support of the motion to sell the six Twin Otters on September 22, 2006, in which it represented that it had sold the first of the Otters for $1,435,000, substantially more than the $1,283,900 minimum price indicated

---

[3]*Id.* at pp. 6-7.

2

in its original motion.[4] Shortly before the hearing on the motions to sell the debtor's aircraft, Era obtained an offer to purchase the remaining Otters for $7.75 million. The offers the debtor has received for the six Twin Otters reflects that this portion of its fleet is worth significantly more than indicated by CapitalSource's appraiser or prior valuations by this court.

CapitalSource opposes the motions to sell on a variety of grounds.[5] It asserts the debtor has failed to meet its burden of proving that there is a sound business purpose for selling its major assets outside of a plan of reorganization. CapitalSource also contends the proposed sales don't satisfy the requirements of 11 U.S.C. § 363(f). CapitalSource says it must be given the right to credit bid for the assets pursuant to § 363(k). Finally, CapitalSource questions whether its claim will be adequately protected and if the exchange of the Twin Otters for the Beech 1900Ds will provide it with the indubitable equivalent of its secured claim.

> There has been disagreement historically on the issue of whether and under what circumstances a chapter 11 debtor may sell substantial assets under section 363. It is now generally accepted that section 363 allows such sales in chapter 11, as long as the sale proponent demonstrates a good, sound business justification for conducting the sale before confirmation (other than appeasement of the loudest creditor), that there has been adequate and reasonable notice of the sale, that the sale has been proposed in good faith, and that the purchase price is fair and

---

[4]Supplemental Mem. In Supp. of Mot. to Sell Six (6) Twin Otters, filed Sept. 22, 2006 (Docket No. 397).

[5]Limited Obj. of CapitalSource Finance LLC to Debtors' Mots. to Sell (A) Three Twin Otter Aircraft, and (B) Six Twin Otter Aircraft, Free & Clear of Liens, filed Sept. 26, 2006 (Docket No. 411).

3

> reasonable. These factors are considered to assure that the interests of all parties in interest are protected and that the sale is not for an illegitimate purpose. Attempts to determine plan issues in connection with the sale will be improper and should result in denial of the relief requested.[6]

In the context of airline reorganizations, preconfirmation sales of substantially all of a chapter 11 debtor's assets have been disfavored.[7] However, the determination of such a motion hinges upon the facts which are present in a given case. The bankruptcy judge "should consider all the salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors, and equity holders alike."[8] And while it is "easy to sympathize with the desire of a bankruptcy court to expedite bankruptcy reorganization proceedings, . . . '[t]he need for expedition, however, is not a justification for abandoning proper standards.'"[9]

The debtor's proposed sales transactions sound like good deals, particularly in light of the fact that the offers for the Twin Otters are substantially more than their appraised value. However, I feel that there are at present problems with the two motions that preclude a final determination at this time. First, ERA must show a good, sound business justification

---

[6] 3 *Collier on Bankruptcy* ¶363.02[3] (15th ed. revised 2006) (citations omitted).

[7] *See Institutional Creditors v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986); *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 700 F.2d 935, 939-40 (5th Cir. 1983).

[8] *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

[9] *Id., citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 450 (1968).

4

for conducting the sales *prior to confirmation*. Given that the confirmation hearing in this case will most likely be held within the next 30 to 45 days, I am not persuaded that this sale must be approved prior to the time of the confirmation hearing. A delay in approving these sales may be inconvenient but, as the Second Circuit noted in *Lionel*, expediency alone is an insufficient justification for a sale of this magnitude.[10]

Second, CapitalSource has objected to the notice of the sales because the deal that Era now has on the table, although admittedly more favorable than initially anticipated, is not the same deal that was noticed. Era wants to sell all of the Twin Otters now, rather than in staggered sales as represented in its motion. There is nothing to indicate that these aircraft, clearly more valuable than at first believed, will decline in value between now and the time of the confirmation hearing.

Finally, the court feels insufficient evidence regarding the Beech 1900Ds has been produced at this point. CapitalSource is entitled to adequate protection of its interest. The Twin Otters comprise a significant portion of the assets which currently protect its interest. I cannot make the same finding with regard to the Beech 1900Ds which the debtor wants to purchase in their place. First of all, there was no expert testimony provided on the value of these aircraft. Secondly, there are over fifty Beech aircraft parked in the desert. CapitalSource's concerns could be justified. More evidence should be provided on this point, and details regarding these two transactions, especially the proposed sale of the six

---

[10]The court recognizes that expediency is not the only basis for Era's motions.

Twin Otters as it now stands, should be included in any amended plan and disclosure statement propounded by Era.

For the foregoing reasons, the court will defer ruling on the debtor's two motions to sell the Twin Otters until the time of the confirmation hearing. An order will entered consistent with this memorandum.

DATED: September 29, 2006.

    /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  C. Christianson, Esq.
J. Siemers, Esq.
E. Goldberg, Esq.
J. Krause, Esq.
M. Mills, Esq.
D. Oesting, Esq.
J. Ostrovsky, Esq.
K. Hill, Esq.
    9/29/06

6