# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>ERA AVIATION, INC.,<br><br>　　　　Debtor. | Case No. A05-02265-DMD<br>Chapter 11 [Lead Case]<br><br>JOINTLY ADMINISTERED |
| In re:<br><br>ERA AVIATION INVESTMENT GROUP, LLC,<br><br>　　　　Debtor. | Case No. A05-02266-DMD<br>Chapter 11<br><br>**Filed On 11/14/06** |

## MEMORANDUM REGARDING MOTION FOR AUTHORITY
## TO PROSECUTE CLAIMS

The Unsecured Creditors Committee ("UCC") has filed a motion for authority to prosecute certain fraudulent transfer claims against CapitalSource. The claims arise out of Era Aviation's transfer of security interests to CapitalSource in conjunction with the 2005 sale of Era stock to Era Aviation Investment Group. The debtor initially sought to retain the claims against CapitalSource and proposed to do so in its plan and disclosure statement of October 17, 2006. Since that time, the parties have participated in a lengthy, but productive, mediation before Judge Ross. The debtor has settled its claims with CapitalSource and another major creditor, Seacor. Era no longer seeks to retain claims against CapitalSource or Seacor following confirmation. Rather, all claims would be settled through a consensual plan of reorganization. The UCC objects to this settlement and requests permission to prosecute the debtor's claims against CapitalSource itself.

The UCC argues that the avoiding powers, including § 548 claims, "must be prosecuted" by the debtor. It maintains that to do otherwise would be a violation of the debtor's fiduciary duties to the estate. I disagree. As the UCC has recognized in its brief, there are three prerequisites that must be fulfilled before a creditor representative may be authorized to initiate an action on behalf of the estate. First, the creditor must allege a colorable claim that would benefit the estate. Second, the debtor must have unjustifiably refused to pursue the claim and, finally, the creditors' committee must obtain permission from the bankruptcy court to pursue the action on behalf of the estate.[1]

In my view, the debtor has ample justification for refusing to pursue the CapitalSource claim. Until the recent mediation breakthrough, the debtor and CapitalSource had been locked in a bitter and costly litigation spiral that impacted virtually every stage of these proceedings. CapitalSource is a determined and worthy adversary with deep pockets. It can afford attorneys and experts of the highest caliber. It has raised substantial issues regarding plan confirmation that could well derail the debtor's best efforts to speedily reorganize. Given the history of this case, the fact that the debtor has reached an accommodation with its largest single creditor is a major breakthrough. The settlement will result in immediate savings of $700,000.00 on the CapitalSource secured claim. The debtor will be permitted to sell its fleet of aging aircraft and replace them with Beech 1900s. The

---

[1] *Canadian Pac. Forest Prod. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1438 (6th Cir. 1995); *Official Comm. of Unsecured Creditors v. Clark (In re National Forge Company)*, 326 B.R. 532, 543 (W.D. Pa. 2005); 7 COLLIER ON BANKRUPTCY, ¶ 1103.05[6][a] at p. 1103-36, 37 (15th ed. revised 2006).

CapitalSource claim will be amortized over 15 years at prime plus two with a balloon in five years. There will be an end to contentious proceedings on confirmation, and the debtor's management will instead be able to focus on running an airline as well as implementing the reforms needed to make the airline profitable. From my standpoint, the settlement recognizes the debtor's fiduciary obligation to creditors. It implements a plan which embodies that obligation. As the debtor has justifiably refused to pursue the CapitalSource claims, the UCC may not pursue those claims on behalf of the estate.

The UCC also contends that the settlements with CapitalSource and Seacor require the filing of an amended disclosure statement and plan. The pending plan provides for payment of 100% of unsecured claims over three years, with interest. Unsecured creditors are given the option of a cash discount for 80% of their allowed unsecured claim. Nothing in the plan calls for the payment of the proceeds of any retained claims to unsecured creditors. These claims were specifically reserved for Era. The disclosure statement, in a discussion of CapitalSource's claim does state, "The plan contemplates that Era and/or the Liquidating Trust *may* pursue a claim that the CapitalSource loan is a fraudulent conveyance as to Era."[2] The disclosure statement goes on to note, however, that none of the projections or financial information attached to the disclosure statement "assume that there will be any benefit from a fraudulent conveyance claim against CapitalSource, for the reason that the

---

[2]Debtor's Disclosure Statement (Revised), filed Oct. 17, 2006 [Docket No. 451], at p. 15 (emphasis added).

3

outcome of any such claim is speculative."[3]  Additionally, the specific portions of the disclosure statement describing the treatment of general unsecured claims makes no reference to the retention of any litigation claims for the benefit of such creditors.[4]

Negotiations between counsel for the debtor and the UCC indicate that no transfer of the CapitalSource claims was contemplated under the pending plan.  In a letter dated October 12, 2006, the UCC requested that the debtor adopt one of three options for the treatment of unsecured creditors under any proposed plan.  One of those options called for reservation of § 548 claims "under conditions to be specified."  The debtor's subsequent plan did not adopt that option.  Rather, it gave the UCC a choice between an 80% cash payment and 100% payment over three years with interest.[5]  In a subsequent letter dated November 6, 2006, counsel for the UCC sought to add language to the plan that would assign the CapitalSource claims to the UCC.  But this language was never incorporated into an amended plan.

Under such circumstances, there is no basis for requiring an amended disclosure statement and plan, or the renoticing of a confirmation hearing.  The plan has never called for the reservation and transfer of the debtor's claims against CapitalSource to the UCC.  Nor was prosecution of the claim against CapitalSource mandated under the plan

---

[3] *Id.* at p. 16.

[4] *Id.* at pp. 26-27.

[5] The 80% cash payment was one of the three options that the UCC indicated that it would endorse in its October 12, 2006, letter.

4

and disclosure statement. The debtor was to retain the claim, but was not required to litigate it. The revised disclosure statement which has been distributed to creditors made it clear that none of the projections contained in that document assumed a recovery on the CapitalSource claim. Finally, the debtor's subsequent settlements with CapitalSource and Seacor have not changed the plan's treatment of the unsecured creditors. They are still entitled to an 80% cash payment or a 100% payment, with interest, over time. In sum, the resolution of the claim against CapitalSource, whether made before or after confirmation, would have no impact on their treatment under the plan. The fact that the claim has been settled before confirmation is immaterial to the treatment of the unsecured creditors, and does not require renoticing or amendment of the plan.

I conclude that the UCC has no basis for requiring an assignment of the debtor's CapitalSource claims to it. Nor can it compel the debtor to file and notice an amended disclosure statement and plan. An appropriate order will be entered.

DATED: November 14, 2006.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:     C. Christianson, Esq.
           M. Mills, Esq.
           E. Goldberg, Esq.
           J. Siemers, Esq.
           U. S. Trustee

           11/14/06

5